FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2013 OCT 21  A 11: 30

CLERK'S OFFICE
AT BALTIMORE
BY_____ DEPUTY



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

*Rod J. Rosenstein*
*United States Attorney*

*Peter M. Nothstein*
*Assistant United States Attorney*

36 South Charles Street
Fourth Floor
Baltimore, Maryland
21201

DIRECT: 410-209-4916
MAIN: 410-209-4800
FAX: 410-962-3124
TTY/TDD: 410-962-4462
Peter.Nothstein@usdoj.gov

September 20, 2013

Shaun F. Owens, Esq.
Schlachman, Belsky & Weiner, P.A.
300 East Lombard Street
Suite 1100
Baltimore, Maryland 21202

Re:  *United States v. Gregory Missouri*  ELH-13-0547

Dear Mr. Owens:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by October 4, 2013 it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.   The defendant agrees to waive indictment and plead guilty to a one-count Information which will be filed against him, charging him with bribery, in violation of 18 U.S.C. § 201. The defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2.   The elements of Count One, to which the defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a.   the defendant gave money or something else of value to a public official, as charged in the Information and Attachment A; and

    b.   the defendant did so with the corrupt intent to influence an official act of that official.

*United States v. Gregory Missouri*                                    Page 1 of 10

## Penalties

3.      The maximum sentence provided by statute for the offense of bribery is as follows: fifteen years of imprisonment, a maximum term of supervised release of three years, and maximum fine of $250,000 or three times the monetary equivalent of the thing of value, whichever is greater.

4.      In addition, the defendant must pay $100 as a special assessment for the count of conviction pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing.

5.      This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.  If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.

6.      The defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the defendant could be returned to custody to serve another period of incarceration and a new term of supervised release.  The defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the defendant will serve any term of imprisonment imposed.

## Waiver of Rights

7.      The defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.      If the defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel.  That trial could be conducted by a judge, without a jury, if the defendant, this Office, and the Court all agreed.

b.      If the defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community.  Counsel and the defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily.  All twelve jurors would have to agree unanimously before the defendant could be found guilty of any count.  The jury would be instructed that the defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the defendant went to trial, the government would have the burden of proving the defendant guilty beyond a reasonable doubt.  The defendant would have the right to confront and cross-examine the government's witnesses. The defendant would not have to present any defense witnesses or evidence

whatsoever. If the defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.     The defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.     If the defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.     By pleading guilty, the defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g.     If the Court accepts the defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.     By pleading guilty, the defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

8.     The defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

9.    This Office and the defendant understand, agree and stipulate to the statement of facts attached hereto as Attachment A, which this Office would prove beyond a reasonable doubt.

10.    This Office and the defendant understand, agree and stipulate to the following applicable sentencing guidelines factors:

  a.    the parties agree and stipulate that the base offense level is 12, pursuant to U.S.S.G. § 2C1.1(a)(2);

  b.    the parties agree and stipulate that 2 levels should be added, pursuant to U.S.S.G. §§ 2C1.1(b)(1) because the offense involved more than one bribe;

  c.    the parties agree and stipulate that 12 levels should be added, pursuant to U.S.S.G. §§ 2B1.1(b)(1)(G) because the total loss to the government was more than $200,000 but less than $400,000.

  **d.    the parties agree and stipulate that the final offense level before other adjustments is 26.**

11.    This Office does not oppose a two-level reduction in the defendant's adjusted offense level, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct.  This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the defendant's timely notification of his intention to plead guilty.  This Office may oppose any adjustment for acceptance of responsibility if the defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.  **In the event this Office makes a motion for the third level of acceptance, the offense level will be 23.**

12.    The defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

13.    The defendant is free to argue for any offense characteristics, departures and/or adjustments set forth in Chapters 2, 3 or 4 of the United States Sentencing Guidelines, as well as a variance under 18 U.S.C. § 3553, upon giving the Government notice at least two weeks prior to the date of sentencing.  The Government reserves the right to oppose any request(s) made by the defendant.

## Restitution

14.    The defendant agrees to pay restitution to the United States Postal Service in the amount of $394,000, pursuant to 18 U.S.C. §§ 3663, 3663A(a)(3), 3563(b)(2), and 3583(d). The defendant agrees that the total amount of restitution reflected in this agreement results from the defendant's offense conduct. The defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution.  If the defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

## Collection of Financial Obligations

15.    The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

16.    In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

17.    The defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs.  The defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years of incarceration and fine.

## Obligations of the United States Attorney's Office

18.    At the time of sentencing, this Office will recommend a sentence within the guidelines range, but will not recommend a fine.

19.    The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the defendant's background, character and conduct.

## Waiver of Appeal

20.    In exchange for the concessions made by this Office and the defendant in this plea agreement, this Office and the defendant waive their rights to appeal as follows:

21.    The defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the defendant's conviction;

a. The defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds 57 months of imprisonment; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below 46 months of imprisonment.

b. Nothing in this agreement shall be construed to prevent the defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

22. The defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

23. The defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

24. The defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The defendant understands

that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the defendant will receive. The defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

25.    This letter supersedes any prior understandings, promises, or conditions between this Office and the defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the defendant fully accepts each and every term and condition of this agreement, please sign and have the defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

Peter M. Nothstein
Assistant United States Attorney

*United States v. Gregory Missouri*                                                      Page 7 of 10

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_10/3/2013_
Date                                    Gregory Missouri

I am Mr. Missouri's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

_10/3/2013_
Date                                    Shaun F. Owens, Esq.

**ATTACHMENT A:  Factual Stipulation**

*The parties hereby stipulate and agree that had this matter gone to trial, the government would have proven the following facts through competent evidence beyond a reasonable doubt. The parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

At all times relevant, the defendant, Gregory Missouri ("Missouri"), was employed as a sworn police officer with the Howard County Police Department.  In addition to his work as a police officer, Missouri operated a landscaping company, Missouri Landscaping.  In 2007, the defendant met R.W., the Station Manager at the Waverly, Maryland Post Office (the "Waverly Post Office").

R.W. and Missouri devised a bribery scheme using the Waverly Post Office and Missouri Landscaping whereby R.W. would submit inflated or false invoices charging the United States Postal Service ("USPS") for work purportedly performed by Missouri Landscaping at the Waverly Post Office.  In Some instances, the invoiced work for general landscaping and snow removal services was performed, but the cost on the invoice was greatly inflated by R.W. and the defendant over the actual cost of the services.  In other instances, the landscaping services and snow removal listed on the invoice were not performed by Missouri Landscaping at all, but R.W. nonetheless approved the false invoices and submitted them into the USPS payment system for payment.  The USPS then paid the defendant for the services purportedly performed by Missouri Landscaping, and the defendant deposited the checks from the USPS into his bank account.  After receiving the funds, Missouri paid R.W. at least half of the fraudulently obtained proceeds, either by cash or by check.

In his position as Station Manager for the Waverly Post Office, R.W. was a public official in that he was an employee acting on behalf of the USPS, an agency of the United States.  As station manager, the approval of invoices was an official act in that it was an action and decision within R.W.'s official capacity as station manager of the Waverly Post Office.  Missouri paid R.W. the proceeds of the inflated or false invoices in order to influence him to collude in and allow a fraud on the United States, as well as to influence R.W. to approve future inflated or false invoices, in violation of his official duties.

From October 2007 to December 1, 2012, R.W. submitted invoices for Missouri Landscaping to the USPS for a total of $394,170 for services ostensibly performed at the Waverly Post Office.  In contrast, from August 2005 to November 2007 (the period prior to R.W.'s control of the Waverly Station), the station spent only $4,258 for landscaping services.  The value of services Missouri actually performed for the Waverly Post Office was far less than the amount invoiced.

R.W. also introduced Missouri to K.P., the Station Manager of the Post Office at 3703 Old Court Road Pikesville, Maryland (the "Pikesville Post Office").  K.P. and the defendant

engaged in the same false invoice bribery scheme as the defendant and R.W. Once the inflated or false invoice was paid, the defendant met with K.P. and paid her at least half of the proceeds. The payments to K.P. were made to influence her to collude in and allow a fraud on the United States, as well as to influence K.P. to approve future inflated or false invoices, in violation of her official duties. Missouri Landscaping invoiced the Pikesville Post Office 38 times, for a total of $65,000. For all but one of those invoices, Missouri performed some of the services reflected on the invoices, but the invoices were significantly inflated. For one invoice, none of the services listed were ever performed.

The parties agree that the loss to the government from the defendant's involvement in the bribery scheme was between $200,000 and $400,000.

\*     \*     \*

I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

10/3/2013
Date

Gregory Missouri

I am Gregory Missouri's attorney. I have carefully reviewed the statement of facts with him.

10/3/2013
Date

Shaun F. Owens, Esq.